UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YOLANDA SANTIAGO<br>Plaintiff | : | CIVIL ACTION NO.<br>3:00CV 2386 (WIG) |
| VS. | : | |
| CITY OF HARTFORD;<br>HARTFORD POLICE DEPARTMENT;<br>OFFICER JULIO CAMACHO<br>Defendants | :<br>:<br>:<br>: | DECEMBER 17, 2003 |

**DEFENDANTS' REPLY BRIEF**

Pursuant to Rule 7(d) of the Local Rules of Civil Procedure, the defendants, City of Hartford and City of Hartford Police Department, reply to the plaintiff's Memorandum of Law in Support of Objection to Motion for Summary Judgment.

I.  **LOCAL RULE 56(a) STATEMENT**

Local Rule 56(a)2 obligates the plaintiff to include with her opposition papers a "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs whether each of the facts asserted by the defendants is admitted or denied. The failure of the plaintiff to do so results in the defendants' Statement being deemed admitted. Conn. L. Civ. R. 56(a)1 (2003). The plaintiff has failed

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

to oppose the defendants' Rule 56(a)1 Statement and, therefore, each factual allegation contained therein is admitted. Accordingly, the plaintiff's description of the facts as set forth in her Memorandum of Law to the extent that they contradict the defendants' Rule 56(a)1 Statement must be disregarded by the Court. With the relevant facts now established, the defendants address in turn the plaintiff's arguments in opposition to their Motion for Summary Judgment.

II.     SECTION 2.B., PP. 3-5

The plaintiff argues that there is sufficient evidence to raise a triable issue of fact as to whether there was a policy or custom of failing to train Hartford police officers on or about December 1997. In support of her argument, the plaintiff relies upon: (1) her deposition testimony that her initial attempt to report the incident with Officer Camacho to the Hartford Police Department was ignored; (2) the scope of the joint law enforcement task force investigating alleged corruption within the Hartford Police Department; (3) Lt. Dryfe's affidavit documenting fourteen incidents of alleged sexual misconduct from 1993 through December 1998; and (4) the 1994 sexual misconduct complaint against Officer Camacho which was investigated but closed as unfounded. *Pl. Mem. of Law*, pp. 3-4.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The principal flaw in plaintiff's argument is that she fails to articulate the alleged policy, practice or custom that caused Camacho to violate the plaintiff's constitutional rights in December of 1997. The plaintiff repeatedly references a "policy or custom" and seems to suggest that there was a "policy or custom" of the City's failure to train its police officers. *Pl. Mem. of Law*, p. 3 ("municipal liability also may be based on a claim of inadequate training . . "). The plaintiff offers no evidence, however, of the training provided to Hartford police officers, and Camacho in particular. Nor does the plaintiff offer evidence of the nature and scope of training police officers should receive or how the alleged deficiency in training was likely to cause a police officer to commit sexual assault against citizens. Without evidence of the training received, or lack thereof, no liability can be imputed to the City.

Even if the plaintiff had offered evidence of police training in the City, a municipality is "not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated [the plaintiff's] constitutional rights." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). It is only when the policy or custom of failing to train <u>causes</u> the constitutional deprivation that could result in municipal liability. Id. Here, the plaintiff has failed to link an alleged deficiency in the training with the plaintiff's

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

alleged constitutional violation. Contrary to the plaintiff's argument, she may not rely on the allegations of her complaint, or legal argument, to defeat a properly supported motion for summary judgment. See Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

Moreover, police officers do not need specific training not to commit sexual assaults against the people they are sworn to protect and serve. To prevail on a failure to train or supervise claim, the plaintiff must not only show that the City's policymakers knew to a "moral certainty" that their employees will confront a given situation, but also that the situation presents the employee with a "difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992). If the situation requires only common sense, it cannot be said that it called for a "difficult choice." Id. Similarly, "[w]here the proper response - to follow one's oath, not to commit [a] crime . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the needs to train or supervise." Id. at 299-300. In the circumstances of this case, it cannot be reasonably argued that the City was deliberately indifferent in failing to train

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Camacho, or its other officers, not to sexually assault city residents, which would be obvious to all, especially police officers.

The frequency in which Hartford police officers were accused of sexual misconduct for the six-year period between January 1993 and December 1998 does not create a reasonable inference of an unconstitutional policy or custom which caused the plaintiff's alleged constitutional deprivation. The defendants' uncontroverted Local 56(a)1 statement, and the evidence offered in support thereof, establishes conclusively that when the City received complaints of sexual misconduct by its police officers, those complaints were not only investigated, but, in many instances resulted in the discipline and/or arrest and prosecution of police officers. See **Exh. C**. The complaints described in Lieutenant Dryfe's affidavit document that the City was not deliberately indifferent to complaints of sexual misconduct. For example, six (6) of those investigations resulted in the officer being arrested and charged with one or more criminal offenses. Id. Another of the complaints compelled the officer to resign before any disciplinary action and another resulted in the officers being disciplined for Conduct Unbecoming an Officer. Id. The City's liability can only be predicated for its deliberate indifference to or tacit authorization of a widespread practice of unconstitutional conduct. See Mettler v. Whitledge, 165

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

F.3d 1197, 1204 (8th Cir. 1999). The fact that officers who were found to have committed such conduct were disciplined, and often criminally charged, diffuses completely the plaintiff's argument that the City was deliberately indifferent to such conduct. Such evidence is, in fact, counter-evidence of an unconstitutional policy or custom.

The creation of the task force in October 1998 to investigate police corruption similarly fails to establish a triable issue of whether there existed in December 1997 an unconstitutional policy or custom in the Hartford Police Department. The criminal investigation into allegations of sexual misconduct was <u>initiated</u> by the Hartford Police Department based on a complaint by a prostitute in August of 1998. **Exh. E**, *Sanzo Aff.* ¶¶ 4-5. Moreover, then Chief of Police, Joseph Croughwell, authorized the transfer of the investigation from Internal Affairs to the Intelligence Division to facilitate the investigation. **Exh. F**, *Croughwell Aff.*, ¶¶ 3-4. Chief Croughwell thereafter sought the assistance of the Chief State's Attorney and at a subsequent meeting with the Chief State's Attorney and the United States Attorney, a joint law enforcement task force was conceived. <u>Id.</u> ¶ 5. It is therefore apparent that the Department's chief policymaker was neither deliberately indifferent to the complaints of sexual misconduct, nor did he tacitly approve of such conduct.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The plaintiff's argument that the 1994 complaint against Officer Camacho is evidence of an unconstitutional policy or custom is equally unavailing. As the plaintiff has not refuted the defendants' Rule 56(a) Statement, it is conclusively established that while such a complaint was made against Officer Camacho, an independent investigator concluded that her claim of sexual misconduct was not credible and closed the investigation as unfounded. **Exh. C, ¶ 9**. Once the investigator closed the investigation as unfounded, there was no basis to impose discipline. Moreover, the mere filing of a complaint does not support a reasonable inference that it is valid or that the City should be on notice of a potential problem. Gold, 151 F.3d at 1351(number of complaints of police misconduct "bears no relation to their validity."). The plaintiff has offered no evidence that the investigator's conclusions were unsupported by credible evidence or that the Department through any of its policymakers deliberately ignored the accusation to the benefit of Officer Camacho.

The plaintiff also argues that her unsuccessful attempt to report the incident in 1998 is evidence of an unconstitutional policy or custom.[1] Even

---

1/   The plaintiff's testimony about when she called the Hartford Police Department and the manner in which the call ended departs significantly from what she told members of the task force during her initial interview on October 12, 2000. **Exh. G**, FBI Form 302. On that occasion, she informed FBI Special Agents Peter Lavelle and Christine Martin and
(continued...)

- 7 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

crediting this allegation, one isolated incident of an alleged complaint being ignored by an unidentified police "dispatcher" does not establish a widespread pattern of unconstitutional conduct. Further, without evidence that the City's policymakers were aware of this call, the plaintiff cannot establish deliberate indifference or tacit approval by the City. The evidence, in fact, is to the contrary. Complaints of alleged sexual misconduct against Hartford police officers received by the Police Department were and continued to be investigated.

DEFENDANTS,
CITY OF HARTFORD
HARTFORD POLICE DEPARTMENT

BY: _____
Brian P. Leaming, Esq.
Fed. Bar No. ct 16075
HALLORAN & SAGE LLP
One Goodwin Square
Hartford, CT 06103
Tele: (860) 522-6103

---

(...continued)
Hartford Police Sergeant John Betz that she only called the police after she learned that police officers had been arrested as part of the federal investigation (which could not have occurred until after October 1998), and that she terminated the call with the unnamed "dispatcher." Id., p. 3.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## **CERTIFICATION**

This is to certify that on this 17th day of December, 2003, the foregoing was either mailed, postpaid, or hand-delivered to:

Angelo Cicchiello, Esq.
Law Offices of Angelo Cicchiello
364 Franklin Avenue
Hartford, CT 06114

William J. Melley III, Esq.
250 Hudson Street
Hartford, CT 06106

_____
Brian P. Leaming

491673.1(HS-FP)

One Goodwin Square         HALLORAN         Phone (860) 522-6103
225 Asylum Street           & SAGE LLP       Fax (860) 548-0006
Hartford, CT 06103                           Juris No. 26105

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YOLANDA SANTIAGO<br>Plaintiff | : <br> : | CIVIL ACTION<br>NO. 3:00CV2386 (WIG) |
| V. | : | |
| CITY OF HARTFORD;<br>HARTFORD POLICE DEPARTMENT;<br>OFFICER JULIO CAMACHO<br>Defendants | :<br>:<br>:<br>: | <br><br><br>DECEMBER 16, 2003 |

### AFFIDAVIT OF FRANCO SANZO

The undersigned, having been duly sworn, deposes and says that:

1. I am over the age of 18 years and understand and believe in the obligations of an oath. I have personal knowledge of the facts set forth herein.

2. I have been a sworn member of the Hartford Police Department since December 1983 and currently hold the rank of Sergeant.

3. I was promoted to Sergeant on September 17, 1995 and on April 10, 1997 I was transferred to the Vice and Narcotics Division.

4. On August 5, 1998, Detective Blair and I arrested Stacy Richard for prostitution in violation of Conn. Gen. Stat. § 53a-62. After being taken into custody, Richard informed us that two Hartford Police Officers had previously coerced her into performing sexual acts and that there may be other prostitutes with similar complaints.

5. The information obtained from Stacy Richard was immediately reported to Lt.

05645.0598

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Kenary, the Commander of the Vice and Narcotics Division. Richard's complaint was thereafter investigated by Sergeant John Betz of the Internal Affairs Division until the creation of a joint law enforcement task force.

_____
Franco Sanzo

Sworn and subscribed to on this __16__ day of December, 2003.

_____
Commissioner of the Superior Court

492757.1(HS-FP)

- 2 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YOLANDA SANTIAGO<br>Plaintiff | : CIVIL ACTION NO.<br>: 3:00CV2386 (WIG) |
| V | : |
| CITY OF HARTFORD :<br>HARTFORD POLICE DEPARTMENT<br>OFFICER JULIO CAMACHO<br>Defendants | :<br>:<br>: DECEMBER 8, 2003 |

### AFFIDAVIT OF JOSEPH CROUGHWELL

I, Joseph Croughwell, being duly sworn depose and say:

1. I am over the age of 18 and understand the obligations of an oath. I have personal knowledge of the facts set forth herein.

2. On or about January of 1994, I was appointed Chief of Police for the City of Hartford. Beginning in June of 1999, I took a medical leave of absence. I did not resume my duties as Chief and Police and subsequently retired from the City of Hartford.

3. I recall Sergeants Franco Sanzo and John Betz informing me that a local prostitute, Stacy Richard, had made a complaint that two Hartford police officers had coerced or threatened her into performing some type of sexual acts. This meeting occurred either the day of Richard's arrest or the following day. At the time, Sgt. John Betz was assigned to the Internal Affairs Division and Sgt. Franco Sanzo was assigned to the Vice and Narcotics Division. I authorized Sgt. Betz to continue his investigation into Ms. Richard's complaint.

4.  Due to the type of accusations that were being made and the scope of the investigation anticipated, I was concerned that a traditional Internal Affairs investigation would not have been an effective means to investigate thoroughly the accusations of Ms. Richard. The Intelligence Division of the Hartford Police Department has more investigative resources and the ability to investigate more sophisticated criminal conduct, especially when it involves allegations of public corruption. As a result, Sgt. Betz was transferred to the Intelligence Division where he could continue his investigation. At some later point, Detective Blair was also assigned to the Intelligence Division to assist Sgt. Betz with his investigation.

5.  Sometime after receiving the initial complaint, I contacted John Bailey, Chief State's Attorney for the State of Connecticut, to discuss what assistance the State could provide. In a subsequent meeting with Hartford State's Attorney Jim Thomas and United States Attorney Stephen Robinson, we discussed the ongoing Hartford investigation. United States Attorney Robinson offered the assistance his office and the Federal Bureau of Investigation ("FBI"). I accepted Attorney Robinson's offer of assistance and informed him that I had already spoken to Chief State's Attorney Bailey about empanelling a State Grand Jury to assist in the investigation. It was agreed that a joint law enforcement was appropriate.

6.  Sometime thereafter, a joint law enforcement task force ("Task Force") was created. The Task Force was comprised of the United States Attorney's Office, the FBI, the Chief State's Attorney's Office and the Hartford Police Department.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

7.      Once the Task Force was created, the United States Attorney's Office became the prosecuting agency and the FBI became the lead investigatory agency. A federal grand jury was empanelled and the information derived from the grand jury and Task Force investigation was subject to the grand jury secrecy rules under Rule 6(e) of the Federal Rules of Criminal Procedure.

8.      I assigned Sergeants Betz and Christopher Lyons to the Task Force to assist in the investigation. Sometime later, Detective Terry Blair was assigned to the Task Force, but I do not recall if that was done before I took my leave of absence.

Joseph Croughwell

Subscribed and sworn to, before me, this 8 day of December, 2003.

Notary Public
Commissioner Superior Court

EXPIRES  4-17-2013

492660



One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

# CITY OF HARTFORD

## INTERDEPARTMENTAL MEMORANDUM

TO: SERGEANT JOHN BETZ, INTELLIGENCE DIVISION

FROM: LIEUTENANT R. KEMMETT, PATROL COMMANDER SQUAD A

SUBJECT: **COMPLAINT AGAINST EX-OFFICER CAMACHO**

DATE: OCTOBER 12, 2000

On the above date at 0610 hours, Executive Officer Sergeant Maglieri received a call from a Yolanda Rodriguez, age 28, who said she just saws Julio Camacho's picture on TV and recognized him as the officer who raped her 2 years ago. She said he had stopped her on Albany Avenue in 1998 and said she would be arrested for buying drugs. While driving to Headquarters, she said Camacho stopped near Bellevue Square and said he would let her go if she wold have sex with him. She said she had intercourse and was allowed to leave. She has never come forward before, she felt no one would believe her. She refused an offer to have investigators respond to here residence but said she could be contacted later at 563-5900. She lives in Rocky Hill at the Motel 6, Room 254. She added and that Julio Camacho did not use protection during intercourse. Also she said she could show investigators the spot where she was forced to have sex.

RK/AM/ml

John Betz Re Off. C

-1-

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription   10/13/2000

YOLONDA SANTIAGO, also known as (a.k.a.) CINDY LOPEZ, a.k.a. INDIA, was advised of the identity of the interviewing agents and the nature of the interview. Present during the interview was Santiago's husband, WALTER GIBSON. Santiago thereafter furnished the following information:

Santiago currently resides with her husband at the Motel 6, 1341 Silas Deane Highway, Wethersfield, Connecticut, Room 254. Santiago has been living at the motel for the last three years.

Santiago has resided in Hartford since the age of three living at residences on Garden Street, New Britain Avenue, Asylum Avenue and South Marshall Street. Santiago's mother currently lives on South Marshall Street. Santiago has five children residing in the Hartford area.

Santiago advised that she has been arrested by the Hartford Police Department (HPD) for larceny three or four times and once for possession of narcotics. Santiago has also been arrested by the West Hartford Police Department on a larceny charge.

Santiago advised that while watching the news on television this morning she saw that a former HPD Officer by the name of JULIO CAMACHO had been arrested. Santiago immediately recognized this individual as the person that sexually assaulted her two or three years ago.

Santiago recalled that the incident occurred during the winter shortly before Christmas. Santiago was in a vehicle with a black male and a white female both of whom were drug addicts. Santiago could not remember the names of either of these two individuals. Santiago did recall that they were driving in a small, light blue car in the area of Albany Avenue and Bedford Street. There is a 24-hour convenience store located near that intersection. As they pulled up in front of the convenience store Santiago got out of the car and went into the store.

A short time later Santiago exited the convenience store and Camacho pulled up in a white and blue cruiser. Santiago

Investigation on  10/12/2000  at  Rocky Hill, Connecticut

File # 194C-NH-38583                                Date dictated  10/12/2000

by  SA Peter T. Lavelle/tfr
    SA Christine Martin/Sergeant John Betz

YOLONDAS, WPD

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

PD-302a (Rev. 10-6-95)

194C-NH-38583

Continuation of FD-302 of  Yolonda Santiago  , On 10/12/2000 , Page 2

recognized Camacho from his patrol duties in that area of Hartford. Santiago had never met Camacho before and did not know his name although Santiago added that from time to time she would see Camacho driving by in his cruiser and he would wave to her.

    Camacho called Santiago over to the police cruiser. When Santiago approached the cruiser, Camacho told Santiago that he had seen what she did. Camacho then told her that he knew that she had just made a drug sale. Santiago denied making a drug sale but was scared because she did have a small amount of cocaine in her pocket. Santiago advised this small amount of cocaine was for personal use. Santiago again denied making a drug sale. Santiago thinks that Camacho initially approached her because she may have looked suspicious getting out of a vehicle with a black male and a white female.

    Camacho got out of the cruiser and walked over to where Santiago was standing. Camacho again told Santiago that he saw her make a drug sale. When Santiago denied selling any drugs, Camacho told her that he was not going to argue with her and that she was under arrest. Camacho then ordered her into the back of the police cruiser. Camacho did not handcuff or search Santiago before ordering her into the police cruiser. Santiago stated that she was very scared which is why she agreed to get into the police cruiser.

    After Camacho closed the rear door on the police cruiser he got back into the vehicle and started driving toward downtown on Albany Avenue. Camacho made a left onto Main toward Bellevue Square. Camacho then turned onto Pavilion Street toward the railroad tracks. Camacho made a right onto Windsor Street and headed toward a bridge. Camacho drove the police cruiser to the rear of a small house or business located near the railroad tracks off Windsor Street. Camacho pulled the cruiser into a parking lot area which Santiago described as a dirt lot behind the building.

    Santiago, still frightened, asked Camacho what they were doing there. Camacho, who was still in the driver's seat of the cruiser, got out of the vehicle and opened the rear door. Camacho told Santiago to get out of the vehicle. Camacho then told Santiago "We're both Puerto Rican". Santiago asked Camacho what he meant by that. Camacho told her,"Look I'll make you a deal. You give me some of that, (pointing his finger at her), and I won't arrest you". Santiago stated that she knew that Camacho was referring to sex.

194C-NH-38583

Continuation of FD-302 of   Yolonda Santiago                        , On  10/12/2000 , Page   3

    Santiago realized that Camacho was serious and did not say anything. Santiago then dropped her pants to her ankles. Camacho told Santiago to turn around because he liked it "doggie style". Camacho told Santiago that it wouldn't take long and that when it was over he would drive her to wherever she wanted to go. Santiago turned and leaned in on the front seat of the cruiser.

    Camacho engaged in sexual intercourse for several minutes with Santiago. Santiago stated that Camacho did not wear a condom and that she                              When Camacho was finished he told Santiago, "See, it wasn't that long". Santiago then pulled her pants back up.

    During the sexual assault, Camacho did not remove any clothing. Santiago advised that Camacho unzipped his zipper so that he could have sex with her.

    During the assault, Camacho spoke to Santiago in both English and Spanish. Camacho kept telling Santiago that they were both Puerto Rican. When Camacho was finished Santiago pulled her pants back up. Camacho then zipped his pants and wiped himself with a small cranberry towel and some water. Camacho told Santiago to get into the front passenger seat of the vehicle.

    Camacho dropped her off on the corner of Brook Street and Albany Avenue in Hartford. During the ride back he did not say anything but when she got out of the vehicle Camacho told her that he would see her again. He then told Santiago to hurry up and get out of the car, that he had to respond to a call because they (HPD), were chasing somebody.

    Santiago never told anyone that Camacho had sexually assaulted her. Santiago thought about telling the police right after the incident occurred but she was not sure the police would believe her. When the story of several police officers arrested for having sex with Hartford area prostitutes was reported on the news over a year ago, Santiago called the HPD and spoke to a female dispatcher on the telephone. Santiago told the dispatcher that one of the male officers had raped her. The female dispatcher asked Santiago if Santiago knew the officer's name. When Santiago replied that she did not know the name of the officer, the dispatcher asked Santiago, "What do you want us to do about it?" Santiago advised that she ended the conversation with the police dispatcher. Santiago only told her husband about the incident after seeing the officer on the news this morning.

194C-NH-38583

Continuation of FD-302 of __Yolonda Santiago__ , On __10/12/2000__ , Page __4__

    Santiago advised that at the time Camacho sexually assaulted her he was not wearing his name tag on his uniform. Santiago also could not remember the number of the police cruiser that Camacho was driving on the night of the assault.

    Santiago recalled that Camacho worked both evenings and nights in that area of Albany Avenue.

    Sergeant (Sgt.) John Betz (HPD) showed Santiago a photo array depicting 8 Hispanic males. Sgt. Betz asked Santiago if she recognized any of the individuals in the photo array. After reviewing the photo array Santiago advised that she was absolutely positive that number 2 was Julio Camacho and that this was the person that had sexually assaulted her. Santiago then circled the number 2 and placed her initials below the photo. Sgt. Betz then placed his initials below Santiago's indicating the date and the time.

    At the conclusion of the interview Santiago stated that her father is a police officer in Puerto Rico and her uncle, Jan Ortiz, is a police officer in the HPD. Santiago actively used drugs years ago and occasionally uses drugs at the present time.

    Santiago is described as follows:

| | |
|---|---|
| Name: | Yolonda Santiago |
| Alias: | Cindy Lopez |
| | India |
| Date of Birth: | |
| SSAN: | |
| Height: | 5'2" |
| Weight: | 180 pounds |
| Hair: | Black |
| Eyes: | Brown |