IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YOLANDA SANTIAGO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:00-CV-2386 (WIG) |
| VS. | : | |
| | : | |
| CITY OF HARTFORD, | : | |
| HARTFORD POLICE DEPARTMENT, | : | |
| OFFICER JULIO CAMACHO, | : | |
| Defendants. | : | AUGUST 16, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE CITY OF HARTFORD'S MOTION FOR RECONSIDERATION

James J. Szerejko, Esq.
CT Fed. Bar No. 04326
Eric P. Daigle, Esq.
CT Fed. Bar No. 23486
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:  (860) 522-6103
Fax: (860) 548-0006

Counsel for Co-Defendants,
City of Hartford and Hartford
Police Department

**ORAL ARGUMENT REQUESTED**

## **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ........................................................................................ 1

I.     THE PLAINTIFF'S PLEADINGS IN OPPOSITION
TO HARTFORD'S MOTION FOR SUMMARY JUDGMENT ........................... 1

II.    THE COURT'S AUGUST 2, 2004 RULING....................................................... 1

STANDARD OF REVIEW ......................................................................... 4

ARGUMENT .............................................................................................. 5

I.     THE COURT OVERLOOKED THE GOVERNING
CASE LAW AND ITS AUGUST 2 RULING IS IN
ERROR UNDER THAT CASE LAW ................................................................. 5

     A.    The Second Circuit's Most Recent Pronouncement
On Municipal Liability ............................................................................. 5

     B.    The Standard For Municipal Liability Under The
Supreme Court Case Law .......................................................................... 8

     C.    Deliberate Indifference .......................................................................... 13

     D.    The Court Erred In Its Application Of The
Standard Governing Municipal Liability Under
§ 42 U.S.C. 1983 .................................................................................... 13

     E.    The Court's Reliance On The Plaintiff's Operator
Story Was Misplaced .............................................................................. 19

     F.    The Investigations By The HPD In Response To
Citizens' Complaints Requires The Entry Of
Summary Judgment In Favor Of Hartford ................................................ 22

     G.    The Case Law Relied Upon By The Court Supports
The Granting Of Hartford's Summary Judgment Motion ......................... 27

     H.    The Case Law Addressing Allegations Of Sexual
Misconduct Support The Granting Of Hartford's
Motion For Summary Judgment .............................................................. 32

i

I.   The Court Failed To Apply The Common Sense
     Rule As Mandated By Walker ................................................................. 35

II.  THE COURT OVERLOOKED THE STANDARD
     GOVERNING MOTIONS FOR SUMMARY JUDGMENT
     AND THE AUGUST 2 RULING CONSTITUTES
     ERROR UNDER THAT CASE LAW .................................................................. 36

     A.   The Proper Standard Governing Summary Judgment
          Under Fed. R. Civ. P. 56 .......................................................................... 36

     B.   The Court Erred In Its Application Of The Standard
          Of Review Governing Summary Judgment Motions ................................ 38

III. IF NECESSARY, THE COURT SHOULD CLARIFY ITS
     FINDINGS WITH REGARD TO DELIBERATE
     INDIFFERENCE UNDER THE WALKER TEST ............................................. 40

CONCLUSION ........................................................................................................... 40

## PRELIMINARY STATEMENT

Pursuant to Local Rule 7(c), the co-defendant, the City of Hartford, submits this memorandum of law in support of its motion for reconsideration of the Court's August 2, 2004 Ruling. For the reasons set forth below, the Court should grant reconsideration and enter summary judgment in favor of Hartford.

## BACKGROUND

### I. THE PLAINTIFF'S PLEADINGS IN OPPOSITION TO HARTFORD'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Yolanda Santiago's opposition to Hartford's motion consisted of a five page memorandum of law, excerpts from her deposition transcript, a copy of a pleading from United States v. Camacho, Criminal No. 00CR215(AVC) (D. Conn.) and a copy of Lieutenant Neil Dryfe's Affidavit, the original of which was submitted by Hartford. The factual background section of Santiago's memorandum merely summarized the allegations from her complaint. (Pl.'s 11/11/03 Mem. of Law, at 1-2) The argument section consisted of conclusory statements. (Id. at 3-5) With one minor clarification, Santiago's Local Rule 56(a)2 Statement *admitted* all of the facts set forth in Hartford's Local Rule 56(a)1 Statement. The foregoing was the full extent of Santiago's evidentiary submission.

### II. THE COURT'S AUGUST 2, 2004 RULING

At the conclusion of its summary of the facts and immediately before its discussion of the standard of review, the court commented on the evidence before it as follows:

> This evidence regarding the HPD complaint log is the ***only evidence in the record*** before this Court regarding the HPD's policies and procedures for preventing and disciplining sexual misconduct by its officers. In support of its motion for summary judgment, the COH and the HPD did not proffer evidence regarding their training of dispatch personnel to handle citizen complaints against unnamed officers. The defendants did not proffer any written policies designed to prevent sexual harassment and misconduct by officers. The defendants did not proffer any

> written policies regarding disciplining of police officers for sexual
> harassment and misconduct. The defendants did not proffer any
> written policies regarding training of police officers in the proper
> reporting of sexual harassment and misconduct by fellow officers.

(8/2/04 Ruling, at 7 (emphasis added))

At the outset of its analysis, the Court framed the "central issues" in a trial to be "whether the City of Hartford had in place appropriate training and policies for its officers and dispatch personnel to address the risk of sexual misconduct by HPD personnel." (8/2/04 Ruling, at 9-10) After a brief discussion of Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) and its progeny, the Court concluded that "[i]n this case, *Ms. Santiago must show* the COH failed to adequately train its employees to prevent and report and redress sexual misconduct by its police officers." (8/2/04 Ruling, at 12 (emphasis added)) However, in the next paragraph, the Court stated that "*Hartford* has proffered no facts relating to its training of its police officers regarding the importance of refraining from sexual misconduct. It also has not proffered any evidence relating to its training of dispatch personnel to properly handle allegations of sexual misconduct reported by the public." (Id. (emphasis added))

After discussing Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992), and to a lesser extent, Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000) and Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995), the Court concluded that they instruct "that where the need to refrain from injurious conduct would appear obvious to most people, such that training would not be needed, a municipality may be found liable for wrongful conduct of its employees if the municipality has notice that its employees are deviating [from] their expected standard of conduct." (8/2/04 Ruling, at 16) It then found that "[i]t is undisputed that the first and third prongs of the Walker test are met by Ms. Santiago." (Id. at 17) Specifically, the Court found that "the City of Hartford policymakers knew 'to a moral certainty' that their officers would confront opportunities to engage in sexual misconduct because it had happened in the past."

2

(Id.) It also found that it was "undisputed that Officer Camacho's alleged choice – to sexually assault Ms. Santiago – if true, caused a deprivation of her constitutional rights." (Id.)

The Court recognized that "[t]he remaining prong that *Ms. Santiago must show* to forestall summary judgment is that training or supervision would reduce the likelihood that Officer Camacho would choose to assault her; or that the City had a history of employees mishandling the situations where they had an opportunity to sexually assault a citizen." (Id. (emphasis added))  The Court addressed this dispositive issue by commenting as follows:

> Unfortunately, the *COH did not provide* this court with any evidence regarding its policies for training officers to avoid sexual misconduct or its policies for disciplining sexual misconduct. The *only* insights provided this Court into the COH's policies on sexual misconduct are the scant two page overview of the investigation and resolution [of] fourteen formal complaints of misconduct filed against officers. Obviously, there is a strong argument to be made that a decent police officer does not need to be trained or instructed not to solicit sex from a citizen in exchange for not arresting her. However, the *lack of any evidence* about how these issues were addressed within the HPD *may raise questions* about whether rouge officers like Camacho felt they could prey upon women with impunity. Moreover, the alleged mishandling of Ms. Santiago's alleged reports of the assault to the HPD may be probative of whether the HPD had a culture of indifference to allegations of sexual assault and consequently failed to vigorously investigate her complaint.

(8/2/04 Ruling, at 17 (emphasis added))[1]

With regard to the fact that Santiago's alleged first report to the Hartford Police Department ("HPD") was made after the alleged assault, the Court noted that it was still probative because it could shed some light on what policies existed in the city on the date of the

---

[1]    Contrary to the Court's statement, there was no allegation or evidence regarding the HPD's mishandling of multiple "reports" by Santiago. In fact, it was undisputed that Santiago refused the HPD's request to interview her immediately and in person at the time of her alleged second telephone call. (Ex. A, Santiago's Depo. Tr. at 93; Hartford's & Pl.'s Local R. 56(a) Statements, ¶ 11)  She agreed to be interviewed the next morning. (Id.)  On October 12, 2000, a Sergeant from the HPD and two Special Agents from the Federal Bureau of Investigation interviewed her. (Santiago's Depo. Tr. at 93; Ex. G, 10/13/00 FBI 302 Report)

alleged constitutional deprivation. (8/2/04 Ruling, at 17-18)  The Court believed that "[i]f a jury

credited Ms. Santiago's allegation that she made the first complaint in 1998 only to be

summarily rebuffed by the dispatcher, then the jury could find that Officer Camacho's

misconduct might have been disclosed earlier." (Id. at 18)  Based on this belief, the Court

concluded that

> [i]f the City of Hartford has a laissez-faire policy regarding the
> disciplining and investigation of sexual misconduct such that some
> officers construed it as a license to engage in misconduct, a jury
> might find that the COH's failure to establish policies regarding
> sexual misconduct amounted to deliberate indifference to the rights
> of people like Ms. Santiago.  Since the ***COH's policies ... have not
> been established on this record*** they are ***reserved*** as questions of
> fact to be determined by a jury.

(Id. at 19 (emphasis added))

## STANDARD OF REVIEW

The reconsideration of a ruling is appropriate when there is an intervening change in the

controlling law, new evidence, or the need to correct a clear error of law or to prevent a manifest

injustice.  United Technologies Corp. v. American Home Assur. Co., 237 F.Supp. 2d 168, 170-

71 (D. Conn. 2001); Rubin v. Hirschfeld, 2001 WL 34152407, at *1 (D. Conn. Nov. 8, 2001).  It

is also appropriate where the court has overlooked case law or other matters.  See United States

v. All Assets of Blue Chip Coffee, Inc., 882 F.Supp. 45, 46 (E.D.N.Y. 1995).

## **ARGUMENT**

### I.  **THE COURT OVERLOOKED THE GOVERNING CASE LAW AND ITS AUGUST 2 RULING IS IN ERROR UNDER THAT CASE LAW**

It is respectfully submitted that the Court was mistaken in its application of the legal standards governing municipal liability under 42 U.S.C. § 1983.

#### A.  **The Second Circuit's Most Recent Pronouncement On Municipal Liability**

On March 15, 2004, the Second Circuit issued a decision in Amnesty America v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004). The August 2 Ruling, did not cite Amnesty America and as demonstrated below, under the standard articulated by the Second Circuit in that case, Hartford's motion for summary judgment should have been granted. See infra, § D.

In Amnesty America, arrestees sued a town under 42 U.S.C. § 1983, alleging that police used excessive force against them at anti-abortion demonstrations. The plaintiffs' claims included a claim for failure to train. In response to the town's motion for summary judgment, the plaintiffs argued that they had proffered sufficient evidence for a reasonable fact finder to conclude that the town's failure to train constituted deliberate indifference within the meaning of City of Canton v. Harris, 489 U.S. 378 (1989) and Walker. The Second Circuit rejected their argument. It held that the plaintiffs had "neglected to offer any evidence,…, as to the purported inadequacies in the Town's training program and the causal relationship between those inadequacies and the alleged violations." Amnesty America, 361 F.3d at 129.

Amnesty America recognized that City of Canton requires that plaintiffs establish not only that the purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that that deficiency is "closely related to the ultimate injury," such that it

"actually caused" the constitutional deprivation. 361 F.3d at 129.[2] The elements of an identified training deficiency and a close causal relationship, which together require the plaintiff to prove that the deprivation occurred as a result of a municipal policy rather than as a result of an isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability. Id. at 130.

The Second Circuit concluded that the plaintiffs had proffered no evidence of the Town's training programs or advanced any theory as to how a training deficiency caused the police officers to use excessive force. Id. The plaintiff's failure to train theory was based solely on evidence that the police used excessive force on two successive occasions. Id. "City of Canton unequivocally requires, however, that the fact finder's inferences of inadequate training and causation be based on more than the mere fact that the misconduct occurred in the first place." Amnesty America, 361 F.3d at 130. Accordingly, the Second Circuit affirmed the entry of summary judgment on the failure to train claim. Specifically, it held that:

> It is ***impossible to prevail*** on a claim that the Town's training program was inadequate ***without any evidence*** as to whether the Town trained its officers between the two demonstrations, how the training was conducted, how better or different training could have prevented the challenged conduct, or how 'a hypothetically well-trained officer would have acted under the circumstances' to remove passively resisting protestors....Moreover, plaintiffs have provided no evidence tending to rule out those causes of the excessive force that would not support municipal liability, such as the negligent administration of a valid program, or one or more officers' negligent or intentional disregard of their training, and therefore no reasonable fact finder could conclude that the excessive force occurred as a result of training deficiencies....Because plaintiffs have failed to raise an inference that the police were improperly trained and that this training caused them to use excessive force, we affirm the district court's grant of summary judgment as to this theory of municipal liability.

---

[2]/    City of Canton also requires that plaintiffs establish that "the officer's shortcomings...resulted from...a faulty training program" rather than from the negligent administration of a sound program or other unrelated circumstance. Amnesty America, 361 F.3d at 129-30 (quoting City of Canton, 489 U.S. at 390-91).

Amnesty America, 361 F.3d at 130-31 (emphasis added).

As part of its analysis, the Second Circuit also clarified its holding in Walker. Amnesty America, 361 F.3d at 130 n.10. It explained that after delineating the showing necessary to establish a city's failure to train is the result of deliberate indifference, it held in Walker that the plaintiff should have an opportunity to prove, after discovery, that the city had failed to train its assistant district attorneys and police officers, and that the need for better training was so obvious that the failure to train would amount to deliberate difference. Id. Because the district court had dismissed Walker's case at the motion to dismiss stage, rather than on summary judgment, the Second Circuit did not require Walker to identify a specific deficiency in the district attorney's training program or to establish a causal link between the lack of training and misconduct. However, in Amnesty America, the court clarified that "*[a]fter discovery, on the other hand, a plaintiff is expected to proffer evidence* from which a reasonable fact finder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation." 361 F.3d at 130 n.10 (emphasis added).

Earlier this month, a district court, applying Amnesty America, granted summary judgment against a plaintiff's failure to train claim because the plaintiff had failed to produce the requisite evidence. Lasher v. City of Schenectady, 2004 WL 1732006, at *10 (N.D.N.Y. Aug. 3, 2004). Specifically, in Lasher, the court concluded that the plaintiff had proffered no evidence of the city's training program or advanced any theory as to how a training deficiency caused a deprivation of its rights. Id. at *10. Instead, he had only asserted a conclusory allegation that the city had failed to train its officers not to engage in certain unconstitutional acts. Id. He only offered as evidence a list of prior felony convictions of city police officers, sworn testimony regarding the behavior of city police officers, and case law in which city police officers were found liable for civil rights violations. Id. The court held that this showing was insufficient

7

because a fact finder's inferences of inadequate training and causation had to be based on more

that the mere fact that misconduct occurred in the first place. Id.[3]

Similarly, a few months ago, Judge Goettel, applying Amnesty America granted

summary judgment on Monell claims based on a police department's alleged policy of

conducting aggressive surveillance and a failure to train claim. Perrelli v. City of East Haven,

2004 WL 1202718, at **3-5 (D. Conn. May 28, 2004). Like the instant case, the only evidence

in the record to support the plaintiff's claims in the Perrelli case was the plaintiff's own

testimony. Accordingly, the court granted summary judgment because the plaintiff had "failed

to offer any evidence as to the purported inadequacies in the City's training program and the

causal relationship between those inadequacies and the alleged constitutional violations." Id. at

*4. The court also concluded that the plaintiff's testimony standing alone was insufficient to

establish a policy, practice or custom by the police department. Id. at *5. Finally, the court

noted that the plaintiff had produced no evidence that the Chief of Police was aware of any

unconstitutional activity on the part of the officers or that he acquiesced in it in any way. Id.

**B.    The Standard For Municipal Liability Under The Supreme Court Case Law**

Section 1983 is not a "federal good government act for municipalities." City of Canton,

489 U.S. at 396 (O'Connor, J., concurring in part and dissenting in part). "The Supreme Court

has placed strict limitations on municipal liability under Section 1983." Gold v. City of Miami,

151 F.3d 1346, 1350 (11th Cir. 1998). It has explained that there are only "limited

circumstances" under which a municipality can be held liable on a failure to train or supervise

---

[3]    See Vippolis v. Village of Haverstraw, 768 F.2d 40, 43-45 (2d Cir. 1985) (Newman, J.)
(reversing denial of judgment as a matter of law where plaintiff made no effort to establish
training received, failed to prove that training was inadequate and what further training he should
have received in order for municipal defendants to comply with state law). See also Carr v.
Castle, 337 F.3d 1221, 1231-32 (10th Cir. 2003) (affirming summary judgment where plaintiff
failed to identify anything in the alleged inadequate training that could be said to have led
directly to use of excessive force).

theory. Id. See Board of County Commissioners v. Brown, 520 U.S. 397, 405 (1997) ("rigorous

standards of culpability and causation"); id. at 410 ("stringent standard of fault"). In analyzing

failure to train or supervise claims, the Supreme Court requires precision. See Collins v. City of

Harker Heights, 503 U.S. 115, 122 (1992) (cases emphasize separate character of inquiry into

questions of municipal responsibility and question of whether constitutional violation occurred).

The theories must "be carefully controlled at critical points to avoid imposing by indirection a

form of vicarious municipal liability flatly rejected by Monell." Spell v. McDaniel, 824 F.2d

1380, 1389 (4th Cir. 1987).

In Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978), the Court held

that municipal liability under § 1983 can be imposed only where the municipality itself "causes"

the constitutional violation. The Court reasoned that § 1983, as originally enacted, imposed

liability of a person "subjected, or caused to be subjected," another person to the deprivation of

federally protected rights. By specifically imposing liability for the torts of another person if one

"caused" the tort to be committed, the statutory language suggested that Congress "did not intend

§ 1983 liability to attach where such causation was absent." Monell, 436 U.S. at 692. See City

of Springfield v. Kibbe, 480 U.S. 257, 266 (1987) (O'Connor, J., dissenting). The Monell Court

concluded that Congress did not intend, in enacting § 1983, that municipalities be held

vicariously liable for the tortious conduct of their employees. It is only when the "execution of

[the] government's policy or custom…inflicts the injury" that the municipality may be held

liable under § 1983. 436 U.S. at 694.

In Oklahoma City v. Tuttle, 471 U.S. 808 (1985), the Court considered whether evidence

of a single incident of use of excessive force by the police could, without more, establish a

municipal policy of failing to properly train and supervise police officers. The Court concluded

that to allow evidence of a single incident to establish inadequate training, without any proof

9

relating to the nature of the training itself, would "unduly threaten [a municipality's] immunity from *respondeat superior* liability." Id. at 830 (Brennan, J., concurring). Instead, to establish inadequate training, plaintiffs must put forward some evidence that the municipality itself has acted or consciously not acted. Id. at 832 (Brennan, J., concurring).

"The plurality opinion in Tuttle made clear that to establish municipal liability for a policy that is not itself unconstitutional, ***the plaintiff must introduce evidence*** sufficient to establish the existence of the policy; evidence showing that the city was at fault for establishing the policy; and evidence establishing that the policy was the moving force in causing the constitutional harm. A ***plaintiff does not carry the burden*** of proving these elements merely by introducing evidence concerning the particular incident at issue: 'where a policy relied upon is not itself unconstitutional, considerable more proof than the single incident will be necessary in every case to establish both the requisite flaw on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.'" Kibbe, 480 U.S. at 270-71 (O'Connor, J., dissenting) (quoting Tuttle, 471 U.S. at 824) (emphasis added).

In Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) the Court clarified that Tuttle should not be taken to mean that a single act could never be the basis of municipal liability. So long as the single challenged act was the decision of a municipal ***policymaker***, the municipality could be held liable. Id. at 480. The Court revisited the policymaker question in St. Louis v. Praprotnik, 485 U.S. 112 (1988). There, it affirmed that state law provides a proper source for assessing who possesses final authority to establish municipal policy. Id. at 124 (opinion of O'Connor, J.).[4]

---

[4]/    In sum, Tuttle and Pembaur require plaintiffs to establish actual conduct by a municipal policymaker. See Walker, 974 F.2d at 296. Praprotnik ensures that only actions by officials relatively high up in the municipal hierarchy will produce municipal liability. Walker, 974 F.2d at 297.

In City of Canton v. Harris, 489 U.S. 378 (1989), the Court addressed the dimensions of municipal liability for a failure to train or supervise. Harris sued Canton alleging that the city had failed to adequately train its police as to when to summon medical care for an injured detainee. The Supreme Court ruled that a claim of inadequate training will trigger municipal liability only where "the failure to train amounts to deliberate indifference to the rights" of those with whom municipal employees will come into contact. Id. at 388. The Court explained that "deliberate indifference" requires that city policymakers make a "deliberate choice…from among various alternatives" not to fully train employees. Id. at 389. Such a deliberate choice could be shown where "in light of the duties assigned to specific officers employs the need for more or different training is so obvious, and the inadequacies so likely to result in the violation of constitutional rights, that the policymakers at the city can reasonably be said to have been deliberately indifferent to the need." Id.

City of Canton recognizes that under Monell, the first inquiry in any case alleging municipal liability under § 1983 is to question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. 489 U.S. at 385. Thus, in the context of a failure to train claim, the plaintiff must prove that the lack of training was the "cause" of the constitutional injury at issue and that this entails more than simply showing "but for" causation. Id. at 393 (O'Connor, J., concurring in part and dissenting in part). In other words, demonstrating that the municipality itself caused the constitutional violation is the "touchstone" of establishing that a municipality can be held liable for unconstitutional action by municipal employees. Amnesty America, 361 F.3d at 125.

Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation "will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is

11

responsible." City of Canton, 489 U.S. at 389. The issue in a failure to train case is "whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" Id. at 390. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. Id. at 391. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Id. Nor will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Id. Such a claim could be made about almost any encounter resulting in an injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. Id. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable. Id.

The Court in City of Canton, also recognized that if it were to adopt lesser standards of fault and causation, it would open municipalities to unprecedented liability under § 1983. 489 U.S. at 391. It noted that in virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. Id. at 392. Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities -- a result the court rejected in Monell, 436 U.S. at 693-94. See City of Canton, 489 U.S. at 391. "It would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs." City of Canton, 489 U.S. at 392. This was an

exercise the Court believed the federal courts were "ill-suited to undertake, as well as one that would implicate serious questions of federalism." Id.

### C.    Deliberate Indifference

The standard for "deliberate indifference" is a "stringent" one. Brown, 520 U.S. at 410. See Cain v. Rock, 67 F.Supp. 2d 544, 550 (D. Md. 1999) ("high" standard). It requires the plaintiff to show that the municipality disregarded a known or obvious risk that the policy would lead to the deprivation of federal rights. Brown, 520 U.S. at 410; Cain, 67 F.Supp. 2d at 550.

The Second Circuit has set out three requirements that must be met by a plaintiff before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens. See Walker, 974 F.2d at 297. Specifically, a plaintiff must show that: (1) a policymaker knows "to a moral certainty" that her employees will confront a given situation; (2) the situation presents that employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. Id. at 297-98. As to the second element, the Walker court explained that "[a] choice might be difficult where, although the proper course is clear, the employee has powerful incentives to make the wrong choice." Id. at 297.

### D.    The Court Erred In Its Application Of The Standard Governing Municipal Liability Under § 42 U.S.C. 1983

By its August 2 Ruling, the Court excused Santiago from having to satisfy the strict standards established by the Supreme Court and the Second Circuit to govern claims against municipalities under § 1983. Despite not holding that Santiago had established a genuine issue of material fact, the Court "reserved" the issues for a jury. As a result, this case is poised to be submitted to a jury on no evidence, other than the plaintiff's testimony that she was assaulted by a former municipal employee. By excusing Santiago from having to produce any of the requisite

13

evidence regarding a policy or custom, the Court is exposing Hartford to the ***respondeat superior*** liability prohibited under <u>Monell</u>.

As the Court itself acknowledged, Santiago produced none of the evidence required to establish a <u>Monell</u> claim. However, instead of granting Hartford's motion for summary judgment as required under <u>Amnesty America</u> and Supreme Court precedent, the Court admonished Hartford for not producing the very evidence that Santiago was obligated to produce. By doing so, the Court incorrectly shifted the burden of proof to Hartford.[5] Consequently, this error should be corrected on reconsideration.

A review of the complete failure in Santiago's proof confirms that reconsideration is appropriate. Specifically, Santiago produced no evidence regarding any Hartford policy or custom. She produced no evidence regarding training, supervising or disciplinary policies or customs employed by Hartford. She produced no evidence regarding training, supervisory or disciplinary policies or customs employed by other police departments. She produced no evidence of any deficiency, let alone the requisite "obvious" deficiency, in any training, supervisory or disciplinary policy or custom employed by Hartford.

Santiago did not produce any evidence that a deficiency in a Hartford training, supervisory or disciplinary policy ***caused*** her alleged injury. Nor did she rule out the possibility that any injury was in fact caused by an officer's negligent or mistaken application of his training, as opposed to a deficient training policy implemented by Hartford. Santiago also did not produce any evidence regarding what training would have prevented Camacho from having

---

[5]    "<u>Monell</u> is a case about responsibility." <u>Pembaur</u>, 475 U.S. at 478 (opinion of Brennan, J.). <u>Monell</u>'s conclusion that tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's "official policy" was intended to distinguish acts of the ***municipality*** from acts of ***employees*** of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. <u>Id.</u> at 479-80. <u>See</u> <u>Monell</u>, 436 U.S. at 691. <u>Monell</u> reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality" -- that is, acts which the municipality has officially sanctioned or ordered. <u>Pembaur</u>, 475 U.S. at 480.

assaulted her. Finally, she did not and will not be offering any expert testimony. (Ex. B, Pl.'s

Resp. to Hartford's Interrog. No. 10)  See Fittanto v. Children's Advocacy Ctr., 836 F.Supp.

1406, 1418 (N.D. Ill. 1993).[6]

In addition to being contrary to the standards recognized by Amnesty America and the

Supreme Court, the August 2 Ruling's conclusion that the absence of evidence in the record

justifies the denial of Hartford's motion for summary judgment is contrary to a plethora of

decisions issued by other federal courts.  For example, the district judges in Connecticut have

overwhelmingly recognized that in order to establish municipal liability, plaintiffs must produce

the requisite evidence and satisfy the stringent burden of proof.  Where a plaintiff fails to

produce evidence and carry her burden of proof on a Monell claim, the judges in this district

have entered summary judgment in favor of the municipality.[7]  Numerous other circuit and

---

[6]/    Citations to exhibits are to the exhibits attached to Hartford's initial and reply
memoranda submitted in support of its motion for summary judgment.

[7]/    Watts v. City of Hartford, 2004 WL 717132, at *4 (D. Conn. Mar. 31, 2004)(Chatigny,
C.J.) (granting summary judgment on failure to supervise claim and recognizing that plaintiff
"must provide evidence" demonstrating deliberate indifference and that failure to discipline was
closely related to and actually caused violation); Birdsall v. City of Hartford, 249 F.Supp.2d 163,
173-74 (D. Conn. 2003)(Underhill, J.) (granting summary judgment on Monell claim based on
conclusory allegations); Jones v. City of Bridgeport, 2002 WL 272397, at *9 (D. Conn. Feb. 19,
2002)(Droney, J.) (granting summary judgment where plaintiff "has not made a sufficient
showing" of evidence on failure to train claim); Tsombanidis v. City of West Haven, 129
F.Supp.2d 136, 162 (D. Conn. 2001)(Goettel, J.) (granting summary judgment where plaintiff
failed to produce any evidence that the city had a policy or custom); Thompson v. City of
Meriden, 1999 WL 301693, at **9-10 (D. Conn. Apr. 14, 1999)(Burns, J.) (granting summary
judgment where plaintiff presented no evidence that the city maintained or condoned a policy or
custom of allowing its police department to subject arrestees to excessive force); Montavon v.
Town of Southington, 1997 WL 835053, at **4-5 (D. Conn. Sept. 29, 1997)(Eginton, J.)
(granting summary judgment where plaintiff did not present any evidence creating material issue
that single incident was based on policy, custom or practice or that patrol sergeant had final
authority to create such policy); Hanrahan v. City of Norwich, 959 F. Supp. 118, 125 (D. Conn.)
(Chatigny, J.) (granting summary judgment on failure to train claim where plaintiff failed to
present evidence concerning procedures from other police departments), aff'd, 133 F.3d 907 (2d
Cir. 1997).

district courts have reached the same result.[8]  Accordingly, on reconsideration, this Court should

enter summary judgment in favor of Hartford.

With regard to the issue of deliberate indifference, Santiago did not produce any evidence

to satisfy any of the <u>Walker</u> prongs.  The Court's conclusions that: (1) Santiago had the burden

to establish the three prongs under <u>Walker</u> and (2) she had produced no evidence - mandated the

granting of Hartford's motion.  <u>Amnesty America</u>, 361 F.3d at 130-31.  Contrary to the August 2

Ruling, Hartford was not required to provide "evidence regarding its policies for training officers

to avoid sexual misconduct or its policies for disciplining sexual misconduct." (8/2/04 Ruling, at

17)  Under <u>Amnesty America</u> and Rule 56(e), Santiago was obligated to produce the evidence

needed to support the essential elements of her claim, including the issue of deliberate

indifference.  Absent such evidence, it is "impossible" for Santiago to prevail on her <u>Monell</u>

---

[8]/    <u>Larkin v. St. Louis Housing Auth. Dev. Corp.</u>, 355 F.3d 1114, 1117-18 (8th Cir. 2004)
(affirming summary judgment and recognizing that the burden was on the plaintiff to proffer
evidence establishing that officers needed additional training); <u>Lytle v. Doyle</u>, 326 F.3d 463,
473-74 (4th Cir. 2003) (affirming summary judgment because plaintiffs did not provide evidence
that additional training would have resulted in officers responding any differently); <u>Pineda v.
City of Houston</u>, 291 F.3d 325, 334-35 (5th Cir. 2002) (affirming summary judgment because
there was no competent evidence of any causal relationship between any shortcomings in
training and injury complained of), <u>cert</u>. <u>denied</u>, 537 U.S. 1110 (2003); <u>McClendon v. City of
Columbia</u>, 258 F.3d 432, 442-43 (5th Cir. 2001) (affirming summary judgment because plaintiff
failed to prove that any additional training would have prevented alleged injury), <u>reinstated in
relevant part</u>, 305 F.3d 314, 321 n.3 (5th Cir. 2002) (en banc), <u>cert</u>. <u>denied</u>, 534 U.S. 1232
(2003); <u>Hayden v. Gracen</u>, 134 F.3d 449, 457 n.14 (1st Cir. 1998) (affirming summary judgment
where there has been no showing that whatever training was not provided could have thwarted
any purposeful discrimination); <u>Ferreira v. Westchester County</u>, 917 F. Supp. 209, 215-16
(S.D.N.Y. 1996)(Parker, J.) (granting summary judgment on failure to train claim absent
showing of how a particular policymaker's specific choice with respect to the training deficiency
at issue reflects "deliberate indifference" to constitutional rights and how the indifference
directly caused injuries); <u>Small v. City of New York</u>, 1999 WL 1129054, at *6 (E.D.N.Y. Oct.
19, 1999) (granting summary judgment on failure to supervise claim where plaintiff failed to
provide critical evidence demonstrating deliberate indifference and causation), <u>aff'd</u> 242 F.3d
367 (2d Cir. 2000); <u>Morrissey v. City of New York</u>, 963 F. Supp. 270, 275 (S.D.N.Y. 1997)
(granting summary judgment where plaintiff failed to create fact question with regard to
requirement that the employees be faced with a difficult choice made easier by adequate
supervision and training); <u>Carnegie v. Miller</u>, 811 F. Supp. 907, 913 (S.D.N.Y. 1993) (granting
summary judgment where plaintiff produced no evidence regarding officers' training and merely
assumed that training was inadequate).

claim. Amnesty America, 361 F.3d at 130. Thus, she cannot "survive" summary judgment. Walker, 974 F.2d at 300.

Moreover, even if a plaintiff satisfies the three Walker criteria her burden of proof is not satisfied. Post v. Elser, 1996 WL 406843, at *5 (N.D.N.Y. July 19, 1996). For instance, the plaintiff must establish that a policymaker was aware of a pattern of misconduct, but failed to institute appropriate training or supervision. Id. A plaintiff must also show how a particular policymaker's specific choice with respect to the training deficiency at issue reflected "deliberate indifference" to her constitutional rights, and how this indifference directly "caused" his injuries. Id. In the absence of such proof, a plaintiff cannot withstand summary judgment. Id.

Accordingly, a plaintiff must do more than assume on the basis of the events at issue both that the training of the officer was inadequate and that this inadequate training was the "cause" or "moving force" of the officer's allegedly unconstitutional behavior. Id. at *6. Such an assumption is question-begging. Id. Under such a theory, inadequate training will always be inferred merely from the fact that a constitutional deprivation by a police officer occurred. Id. Such an approach is no more than a means for circumventing Monell's limitations all together. Id. Thus, in the instant case, even putting aside Santiago's failure to establish deliberate indifference, Hartford is still entitled to summary judgment as a result of Santiago's submission of nothing more than conclusory allegations.

The Court has also overlooked the fact that the failure in Santiago's evidence was the result of her strategic decisions regarding discovery. Hartford should not be penalized because of those decisions. See Sarus v. Rotundo, 831 F.2d 397, 402 (2d Cir. 1987)(loath to affirm finding of a policy of deliberate indifference where "most elementary of discovery procedures" were not pursued). Nor should the Court allow Santiago to undertake discovery for the first time during a jury trial. Such a result would be contrary to the purpose behind Rule 56. See Fed. R.

Civ. P. 56(e), 1963 Advisory Comm. Notes (Rule 56's "mission" is to "assess the proof in order to see whether there is a genuine need for trial").

Further, Santiago has failed to argue, let alone produce evidence demonstrating, a causal connection between the alleged (but unidentified) municipal policy or custom and the constitutional violation. "Absent of showing a causal link between an official policy or custom and the plaintiffs' injury, Monell prohibits a finding of liability against (a municipality)." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Santiago does not contend that Hartford's police training program authorizes its officers to assault citizens; rather, her argument (as articulated by the August 2 Ruling) is that the (yet to be identified) methods taught in Hartford's training program were inadequate (in a yet to be identified manner), and that if former Officer Julio Camacho had received more or different training (the details of which have yet to be identified), he would not have engaged in alleged unconstitutional conduct. Santiago's theory on the failure to supervise/investigate/discipline claim is the same. "The difficulty with [this] argument is that at the time of the officer's alleged misconduct, any number of other factors were also in operation that were equally likely to contribute or play a predominate part in bringing about the constitutional injury: the disposition of the individual officers, the extent of their experience with similar incidents.... To conclude, in a particular instance, that omissions in a municipal training program constituted the 'moving force' in bringing about the officer's unconstitutional conduct, notwithstanding the large number of intervening causes also at work up to the time of the constitutional harm, appears to be largely a matter of speculation and conjecture." Kibbe, 480 U.S. at 268. In other words, absent substantial evidence on causation, Santiago's Monell claim fails as a matter of law.

Thus, the Court's comment, (8/2/04 Ruling, at 18), regarding what a jury might find "if" Hartford had a "laissez-faire policy regarding the disciplining and investigation of sexual

18

misconduct such that some officers construed it as license to engage in misconduct," is

misplaced. See Batista, 702 F.2d at 399 (plaintiff failed to prove officers knew others were not

disciplined or that city policy condoned police violation of civil rights). In light of the complete

failure in Santiago's evidence, such questions are speculation and conjecture. Accordingly, it

would be error to submit them to a jury. See Fed. R. Civ. P. 56(e).

### E.    The Court's Reliance On The Plaintiff's Operator Story Was Misplaced

The August 2 Ruling's reliance upon Santiago's story regarding a HPD operator hanging

up on her when she allegedly, first attempted to report the assault some two months after it

occurred is misplaced. (8/2/04 Ruling, at 17-18) Under the rigorous standards governing Monell

claims, the story does not justify the denial of summary judgment for at least five reasons.

First, the Court overlooks the fact that Santiago has failed to produce any evidence

regarding any other alleged mishandling of a citizen complaint by the HPD. In order to establish

municipal liability, a plaintiff must point to facts outside her own case to support her allegations

of a policy or custom on the part of a municipality. See Birdsall, 249 F.Supp.2d at 174. A single

incident involving only an actor below the policymaking level will not suffice to raise an

inference of the existence of a custom or policy. Pembauer, 475 U.S. at 480; Tuttle, 471 U.S. at

830; Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). Thus, an allegation of a

police officer's inaction in the instance complained of is insufficient to establish a custom or

policy. See Praprotnik, 485 US. at 128 (must prove policy or custom); Vreeland v. Townsend,

1993 WL 115236, at *5 (6th Cir. Apr. 14, 1993) (evidence of multiple unprofessional exchanges

with dispatchers insufficient absent evidence they were following a policy or custom).

Second, the Court overlooks the fact that any reported misconduct by the unidentified

telephone operator (a non-final policymaker) would not, as a matter of law, provide a basis for

holding Hartford liable under § 1983. Tuttle, 471 U.S. at 821; Anthony v. City of New York,

339 F.3d 129, 139 (2d Cir. 2003) ("final government policy"); Molden v. Braceville Police

Dep't, 1991 WL 119510, at *3 (6th Cir. July 3, 1991) (even negligent conduct by dispatcher

would not be evidence of faulty policy by department); Fincher v. County of Westchester, 979 F.

Supp. 989, 1007 (S.D.N.Y. 1997) (lower-echelon employees cannot produce liability for

municipality under § 1983).

Third, the Court overlooks the fact that there is neither an allegation nor evidence that a

Hartford policymaker ever had notice of Santiago's alleged attempt to submit a complaint in

February or March 1998. See Qutb v. Ramsey, 285 F.Supp. 33, 46 (D.D.C. 2003). Absent

evidence that a Hartford policymaker received information regarding Santiago's alleged attempt

and ignored it, she cannot establish deliberate indifference on the part of Hartford. See Lytle,

326 F.3d at 474; Clarke v. Sweeney, 312 F.Supp.2d 277, 303 (D. Conn. 2004).

Fourth, the Court overlooks the fact that Santiago has never alleged, let alone produced

any evidence to establish a causal relationship between the alleged conduct of the telephone

operator and her assault which allegedly occurred two months earlier. See Raisdana v. City of

Wichita, 1993 WL 302233, at *4 (D. Kan. July 23, 1993) (plaintiff failed to demonstrate

administrative policy regarding dispatcher's role was causally connected to the alleged

constitutional violation).

Finally, the Court overlooks the fact that municipality can only be liable for the violation

of a clearly established constitutional right. See Townes v. City of New York, 176 F.3d 138,

143-44 (2d Cir. 1999); Young v. County of Fulton, 160 F.3d 899, 904 (2d Cir. 1998). Even

assuming the veracity of the story, the telephone operator's conduct did not violate any clearly