UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------X
YOLANDA SANTIAGO,                :

      Plaintiff,                 :

           vs.                   :    No. 3:00CV2386(WIG)

CITY OF HARTFORD,                :
and OFFICER JULIO CAMACHO,
                                 :

      Defendants.
-----------------------------X
```

## RULING ON MOTION FOR RECONSIDERATION [DOC. # 51]

Pending before the Court is the City of Hartford's Motion for Reconsideration, seeking reconsideration of this Court's denial of summary judgment on Plaintiff's § 1983 claims against the City.  (Pl.'s Compl., Ct. V.)  For the reasons discussed below, the Court grants the City's Motion for Reconsideration and, upon reconsideration, reverses its earlier ruling and grants summary judgment in favor of the City on Plaintiff's § 1983 claim.

## Discussion

The facts giving rise to this lawsuit are set forth in the Court's summary judgment ruling and will not be repeated herein, except as necessary.

This case arises out of an alleged sexual assault on Plaintiff, Yolando Santiago, by Defendant, Julio Camacho, while Officer Camacho was working as a police officer for the City of

Hartford.  Without conceding the veracity of Plaintiff's allegations against Officer Camacho, the City moved for summary judgment on the ground that the allegations, even if true, failed to state a cognizable claim against the City under 42 U.S.C. § 1983.[1]  See Monell v. Department of Social Services, 436 U.S. 658 (1978).  This Court denied the City's motion for summary judgment on Plaintiff's § 1983 cause of action, which was premised on claims that the Hartford Police Department's failure to train and failure to supervise its police officers amounted to deliberate indifference to the rights of persons with whom the police come into contact, including Plaintiff.  It is as to this portion of the Court's ruling that the City now seeks reconsideration.

    As Plaintiff points out, the standard for granting reconsideration is strict.  The Second Circuit has held that a motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided.  Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Generally, reconsideration should be denied unless the moving party can point to controlling decisions or data that the Court overlooked, in other words, matters that might reasonably be expected to alter the conclusion reached by the Court.  Id. (finding no abuse of discretion in the district court's granting

---

[1]    The City also moved for summary judgment on Plaintiff's fourth count, brought under Conn. Gen. Stat. § 7-465, which was granted.

reconsideration in light of the moving party's introduction of additional relevant case law and substantial legislative history).

In the instant case, the City of Hartford has pointed to substantial relevant case law, <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113 (2d Cir. Mar. 15, 2004), which this Court overlooked in its summary judgment ruling. Judge Nevas has also recently granted reconsideration and reversed his prior summary judgment ruling in a case against the City of Hartford, premised on factual allegations strikingly similar to those in the instant case. <u>Jane Doe II v. City of Hartford</u>, No. 3:01CV1026(AHN), 2005 WL 2009051 (D. Conn. Aug. 22, 2005). These decisions warrant the Court's reconsideration of its earlier decision denying the City's motion for summary judgment on Plaintiff's § 1983 claims.

Additionally, the Court agrees with the City that, at various points in its earlier ruling, the Court imposed an improper burden on the City as the moving party, requiring it to present evidence to negate Plaintiff's claims, when the burden should have been on Plaintiff to produce evidence in support of the essential elements of her claims. That aspect of the Court's ruling will be clarified below.

## 1.  The Standard Governing Summary Judgment Motions

After the close of discovery, the City moved for summary judgment on Plaintiff's § 1983 claim on the ground that Plaintiff

3

had not, and could not, proffer evidence supporting her claim
that the City's alleged failure to train and supervise its police
officers constituted deliberate indifference to the
constitutional rights of persons such as Plaintiff, and,
therefore, that it was entitled to summary judgment as a matter
of law.  In support of its motion, the City produced excerpts
from the Plaintiff's deposition in which she described her sexual
assault by Officer Camacho, her report of the incident several
months later, and her subsequent report of the incident after
seeing a television report of Officer Camacho's arrest (Def.'s
Ex. A); Plaintiff's responses to interrogatories and production
requests (Def.'s Ex. B); the Affidavit of Neil Dryfe, Commanding
Officer of the Internal Affairs Division of the Police
Department, which identified fourteen complaints of sexual
misconduct by Hartford police officers in the Police Department's
complaint log, including a 1994 complaint against Officer
Camacho, and the investigation and disposition of these charges,
as more fully described below (Def.'s Ex. C); and a letter of
resignation from Officer Camacho (Def.'s Ex. D).  In response to
the motion, the only additional evidence produced by Plaintiff
was a notice of related cases filed in the criminal case against
Officer Camacho, which mentioned the assembly of a task force in
October 1998 to investigate allegations of corruption in the
Hartford Police Department and the resulting indictments against

4

six police officers (Pl.'s Ex. B).

In order for Plaintiff to defeat a properly supported summary judgment motion, she must come forward with affidavits, or other materials encompassed by Rule 56(e), Fed. R. Civ. P., setting forth specific facts showing that there is a genuine issue of material fact to be tried. See Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996). She cannot defeat the motion by relying on the allegations of her pleadings or on mere conclusory statements. See Gottlieb, 84 F.3d at 518. Rather, she must set forth specific facts in support of her claims showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P.; see Watts v. City of Hartford, No. 3:00cv0681(RNC), 2004 WL 717132, at *4 (D. Conn. Mar. 31, 2004) (granting summary judgment on a § 1983 failure-to-supervise claim where plaintiff failed to produce evidence of the city's deliberate indifference and the causal connection between the city's failure to supervise and the unconstitutional conduct).

As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986),

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an

5

> essential element of the nonmoving party's
> case necessarily renders all other facts
> immaterial.  The moving party is "entitled to
> a judgment as a matter of law" because the
> nonmoving party has failed to make a
> sufficient showing on an essential element of
> her case with respect to which she has the
> burden of proof.

477 U.S. at 322-23.

While the moving party bears the initial burden of informing the Court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits, if any, and other materials which it believes demonstrate the absence of a genuine issue of material fact, the Supreme Court held that Rule 56 does not require the moving party to "support its motion with affidavits or similar materials negating the opponent's claim." Id. at 323 (original emphasis). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims and defenses have no factual basis." Id. at 327; see also Vann v. City of New York, 72 F.3d 1040, 1048 (2d Cir. 1995) (requiring non-movant to produce evidence establishing a genuine issue of material fact).

To the extent that the Court's prior summary judgment ruling imposed upon the City the burden of producing evidence

6

affirmatively establishing the existence of adequate training and
supervision programs within the police department - in other
words, evidence negating Plaintiff's claims - that portion of the
ruling was in error.  See generally 11 James Wm. Moore, Moore's
Federal Practice § 56.13[1] (3d ed. 2005) ("If the movant does
not bear the ultimate burden of persuasion on a particular claim
at trial, it may satisfy its initial burden by pointing out that
the record lacks substantial evidence to support a necessary
element of the nonmovant's claim.").  Once the City meets its
initial burden of production, the burden shifts to Plaintiff to
identify specific facts, supported by evidence, affidavits,
depositions, or other materials contemplated by Rule 56(e), which
show the Court that there is in fact a genuine issue for trial.
Id. at § 56.13[2].  "[T]here can be no issue for trial unless
there is sufficient evidence presented which could support a jury
verdict in the nonmoving party's favor."  Id.  Applying this
standard to the City's summary judgment motion, the Court now
reconsiders the motion with respect to Plaintiff's inadequate
training and failure-to-supervise theories of liability under §
1983.

## 2.  Inadequate Training

In Amnesty America, plaintiff-arrestees sued the town of
West Hartford and its chief of police under § 1983, alleging that
they were victims of excessive force perpetrated by the town's

police officers at two anti-abortion protests.  The district court granted summary judgment in favor of the town, holding that the plaintiffs had failed to show that the police officers' actions were taken pursuant to a municipal policy or custom under Monell and, thus, failed to establish a basis upon which the town could be held liable for the officers' actions.  The plaintiffs had based their Monell claims on the town's failure to train its officers not to use excessive force in making arrests and the police chief's failure to supervise.  The Second Circuit affirmed the grant of summary judgment in favor of the town on the plaintiffs' failure-to-train claim.  The Court found that the plaintiffs had failed to offer any evidence as to the purported inadequacies in the town's training program and had failed to offer any evidence as to the causal connection between those inadequacies and the alleged constitutional violations.  Amnesty America, 361 F.3d at 129.

The Court acknowledged that a municipality may be liable under § 1983 for failure to train "where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training," but emphasized that the failure to train must occur under circumstances constituting "deliberate indifference."[2]  Id.

---

[2]  In Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992), cert. denied, 507 U.S. 961 (1993), in ruling on a motion to dismiss, the Second Circuit discussed the circumstances

(citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 387-90 (1989)).
Additionally, the Court held that plaintiffs must identify a
specific deficiency in a municipality's training program and
establish that this deficiency was "'closely related to the
ultimate injury,' such that it 'actually caused' the
constitutional deprivation." <u>Id.</u> (quoting <u>City of Canton</u>, 489
U.S. at 391).[3]  The Court emphasized that the plaintiffs must
establish that "'the officer's shortcomings . . . resulted from .
. . a faulty training program' rather than from the negligent
administration of a sound program or other unrelated
circumstances." <u>Id.</u> at 129-30 (quoting <u>City of Canton</u>, 489 U.S.
at 390-91).  "<u>City of Canton</u> unequivocally requires . . . that
the factfinder's inferences of inadequate training and causation

_____

where failure to train would be sufficient to reflect a
municipality's deliberate indifference and amount to a government
policy or custom.  The Court held that in order to establish
deliberate indifference from a failure to train, a plaintiff must
show (1) "that a policymaker knows 'to a moral certainty' that
[his] employees will confront a given situation"; (2) "that the
situation either presents the employee with a difficult choice of
the sort that training or supervision will make less difficult or
that there is a history of employees mishandling the situation";
and (3) "that the wrong choice by the city employee will
frequently cause the deprivation of a citizen's constitutional
rights." <u>Id.</u> (internal citations omitted).

   [3]  <u>See also</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115,
123 (1992), in which the Court stressed that a showing of
deliberately indifferent training does not itself provide a basis
for imposing liability against a municipality under § 1983.  A
plaintiff must also demonstrate that the inadequate training
caused the violation of the plaintiff's federally protected
right.

be based on more that the mere fact that the misconduct occurred in the first place." Id. at 130.

The Court explained that to require a plaintiff to identify a specific training deficiency and to prove a close causal connection between that deficiency and the constitutional deprivation ensures that a failure-to-train theory does not "collapse into respondeat superior liability" for the misconduct of a single actor. Id.  To adopt a lesser standard of fault and causation would create a risk that a municipality would be liable not for its own official decisions and actions but instead for the independent actions of its employees. City of Canton, 489 U.S. at 391.

In the instant case, Plaintiff Santiago, like the plaintiffs in Amnesty America, has failed to proffer any evidence concerning the City's training programs and has failed to identify any specific training deficiency.  Other than proffering evidence that the sexual assault occurred and that, over a six-year period, there had been reports of fourteen other incidents involving Hartford police officers, which complaints were investigated with discipline imposed against certain individuals, Plaintiff has failed to offer any evidence in support of her claim that the City's training program was deficient in any manner whatsoever and that such deficiency amounted to a deliberate indifference by the City to the rights of people with

10

whom the police would come into contact.

Additionally, even if specific deficiencies in training had been identified by Plaintiff, she has failed to advance any theory as to how those training deficiencies, as opposed to some unrelated circumstance not implicating liability on the part of the City, caused Officer Camacho to sexually assault her.  The proper conduct for a police officer, refraining from sexual assault and rape of an arrestee, is patently obvious.  It is difficult to conceive of how additional training could have prevented the intentional sexual assault of Plaintiff by Officer Camacho so as to justify a finding of liability on the part of the City.  As the Eighth Circuit held, "[i]n light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.  Moreover, even if the training was in some manner deficient, the identified deficiency in a city's training program must be closely related to the ultimate injury such that the deficiency in training actually caused the police officers' offending conduct."  Andrews v. Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996) (quoting City of Canton, 489 U.S. at 391) (internal quotation marks omitted).

Other courts, in ruling on summary judgment motions in similar cases, have held likewise.  See generally Martin A. Schwartz, 1A Section 1983 Litigation Claism and Defenses § 7.17

at 7-162 through 7-204 (4th ed. 2005) (surveying inadequate training cases against municipalities under § 1983 and concluding that few § 1983 claimants are able to prevail under the rigorous City of Canton standards).

For example, in Sewell v. Town of Lake Hamilton, 117 F.3d 488 (11th Cir. 1997), cert. denied, 522 U.S. 1075 (1998), the Eleventh Circuit, relying on the Second Circuit's decision in Walker v. City of New York, 974 F.2d at 299-300, held that the town could not be liable under § 1983 on failure-to-train and failure-to-supervise theories for the sexual molestation of an arrestee by a town police officer.  The Court held that where the proper action is obvious to all without training or supervision, then the failure to train or supervise generally is not "so likely" to produce a wrong decision by the officer as to support an inference of deliberate indifference by city policymakers of the need to train and/or supervise its police officers.  Sewell, 117 F.3d at 490.

Similarly, in Jones v. James, No. Civ. 02-4131, 2005 WL 459652 (D. Minn. Feb. 24, 2005), the district court granted the county's summary judgment motion on the plaintiff's inadequate training claim under § 1983.  In that case, a county civilian transport officer had engaged in sexual relations with the plaintiff, an inmate in the county jail.  The plaintiff alleged that the county had violated § 1983 by, inter alia, not providing

the transport officer with sufficient "detention center personnel training" and by failing to instruct him on how to interact with female prisoners.  The district court granted summary judgment in favor of the county on the grounds that the plaintiff had failed to offer any evidence that the county failed to properly train or that it was deliberately indifferent to the rights of people living in the county.  Moreover, the court held, "no reasonable jury could find that any alleged failure on the part of [the] County to train [the defendant] proximately caused [him] to commit the crime of third degree criminal sexual conduct by having sex with a detained female in the back of a transport van."  Jones, 2005 WL 459652, at *5; see also Clarke v. Sweeney, 312 F. Supp. 2d 277, 303-04 (D. Conn. 2004) (granting summary judgment in favor of the City on the plaintiff's failure-to-train claim); Perrelli v. City of East Haven, No. 3:02CV0008, 2004 WL 1202718, at *4 (D. Conn. May 28, 2004) (granting summary judgment for the city where the plaintiff failed to offer any evidence as to the purported inadequacies in the city's training program and the causal relationship between those inadequacies and the alleged constitutional violation); Barney v. Pulsipher, 143 F.3d 1299, 1308 (10th Cir. 1998) (remarking that "[s]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior," and affirming summary judgment in favor of the county and sheriff

13

where the plaintiff had failed to present evidence pertaining to the alleged inadequacies in the training program).[4]

Most recently, in Jane Doe II v. City of Hartford, Judge Nevas granted summary judgment in favor of the City of Hartford on the plaintiff's § 1983 failure-to-train claim, finding that the plaintiff had failed to offer evidence that the City's failure to train caused the officer's improper conduct (sexual assault of a prostitute).  Doe II, 2005 WL 2009051, at *6. Citing Walker, Judge Nevas held that the plaintiff could survive summary judgment only by producing some evidence that the policymakers were aware of this unlawful conduct and failed to institute appropriate training, such that their failure to train amounted to a conscious disregard of a risk that was likely to occur.  Id.

As the Second Circuit held in Amnesty America with respect to the plaintiffs' failure-to-train theory of liability, "[i]t is impossible to prevail . . . without any evidence as to . . . how

---

[4]  The case of Harris v. City of Pagedale, 821 F.2d 499 (8th Cir.), cert. denied, 484 U.S. 986 (1987), cited in the Court's earlier opinion, is distinguishable on its facts.  There, the Eighth Circuit affirmed a jury verdict holding that the plaintiff had established a city custom of failing to investigate or act on citizen complaints of sexual misconduct by police officers and that this custom proximately caused the sexual assault.  The Court noted that the plaintiff's testimony concerning the city's failure to investigate and act on citizen complaints had been corroborated by "extensive evidence of prior incidents" and also cited to the testimony of numerous witnesses concerning their complaints of sexual misconduct by police officers to which the city had failed to respond in any meaningful way.  Id. at 501.

the training was conducted, how better or different training could have prevented the challenged conduct, or how 'a hypothetically well-trained officer would have acted under the circumstances.'"  361 F.3d at 130 (quoting <u>City of Canton</u>, 489 U.S. at 391); <u>see also</u> <u>Malone v. City of New York</u>, No. 01CV6128, 2005 WL 1892019, at *5 (E.D.N.Y. Aug. 9, 2005).  "The failure to identify a specific deficiency in the city's training program and provide evidence that the deficiency caused the plaintiff's injury requires summary judgment for the City."  <u>Esmont v. City of New York</u>, No. CV025560CPS, 2005 WL 1367108, at *6 (E.D.N.Y. Mar. 16, 2005); <u>see also</u> <u>Callum v. Marsh</u>, No. 3:02CV57(AHN), 2005 WL 752213 (D. Conn. Mar. 31, 2005).  Here, Plaintiff has produced no evidence of a specific training deficiency in the Hartford Police Department or evidence as to how this training deficiency was causally connected to the actions taken by Officer Camacho. Therefore, upon reconsideration of the City's motion for summary judgment, the Court concludes that summary judgment should have been granted in favor of the City on Plaintiff's § 1983 claim based upon inadequate training.

## 3.  Failure to Supervise

In <u>Amnesty America</u>, the Second Circuit also reviewed the plaintiffs' § 1983 failure-to-supervise claim against the town of West Hartford.  Again, the Second Circuit held that a plaintiff asserting a failure-to-supervise claim against a municipality

must establish "deliberate indifference," as opposed to
negligence, by showing that a policymaking official had notice of
a potentially serious problem of unconstitutional conduct, such
that the need for corrective action or supervision was obvious,
and that he failed to investigate or rectify the situation.
Anmesty America, 381 F.3d at 128.  The Court held that the
"operative inquiry is whether the facts suggest that the
policymaker's inaction was the result of a 'conscious choice'
rather than mere negligence."  Id. (citing City of Canton, 489
U.S. at 389).  Applying these standards, the Court found that
the plaintiffs had "proffered ample evidence from which a
reasonable factfinder could conclude that the necessity for more
supervision was glaringly obvious" at both anti-abortion
demonstrations and that the police chief, who was present at the
demonstrations, ignored, and even encouraged, the police
officers' use of excessive force against the arrestees.  361 F.3d
at 127-28.  Accordingly, the Court reversed the grant of summary
judgment in favor of the town.

     In the instant case, unlike Amnesty America, there is no
evidence of the Police Chief's actual presence at the scene of
the constitutional violation and his subsequent failure to take
corrective action.  Instead, Plaintiff has relied upon her
testimony that when she telephoned the police department to
report the incident in February or March of 1998, an unidentified

16

woman told her that there was nothing that could be done and hung up on her.  Additionally she relies upon the fourteen complaints of sexual assaults by Hartford police officers, including a 1994 complaint against Officer Camacho, which she maintains raise an issue of fact as to whether there was a policy or custom of the Hartford Police Department condoning such conduct.

To the extent Plaintiff relies on the lack of response by an unidentified telephone operator to her initial telephone call three months after the incident, there is no claim or evidence that a Hartford policymaker had notice of this telephone call. See Pembauer v. City of Cincinnati, 475 U.S. 469, 480 (1986); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).  To the contrary, the evidence indicates that as soon as the police chief had notice of the complaints of sexual misconduct by police officers, an investigation was immediately launched involving Internal Affairs, the Intelligence Division, the State Attorney General's Office, and the F.B.I.  See Discussion in Ruling on Mot. for Summary Judgment at 3-5. Plaintiff was interviewed as part of this investigation, which ultimately led to the arrest and conviction of six officers, including Officer Camacho.

To the extent that Plaintiff relies on the reported incidents of sexual assault by Hartford police officers, the undisputed facts of record, which have been acknowledged by Plaintiff, show that over a six-year period, from January 1993 to

17

December 1998, the Hartford Police Department received fourteen complaints of sexual assaults by its police officers.  Each of these complaints was investigated by either the Internal Affairs, Major Crimes, or Youth Services Divisions of the Hartford Police Department.  (Local Rule 56(a)1 St. ¶¶ 13 & 15, admitted by Plaintiff.)  Nine of the fourteen complaints involved off-duty conduct by police officers.  (Id. ¶ 14, admitted by Plaintiff.) Six of the complaints resulted in criminal arrests.

Of the remaining eight, one from 1994 involved Officer Camacho, and was closed as unfounded after an investigation by the Internal Affairs Division.  The complainant alleged that while Officer Camacho was investigating a burglary complaint, he forced himself on her, kissing her twice, and touching her breasts.  Internal Affairs interviewed the complainant on several occasions.  During the interviews, the complainant appeared confused and changed her account of the incident each time she related it to the investigator.  The investigator also questioned the validity of the complaint because of the complainant's apparent use of marijuana and possible impaired state, her previous admissions to a hospital for psychiatric treatment and reports of suicide attempts, her lies to her employer about the investigation, and her apparent confusion and alteration of her account each time she related it to the investigator. (Def.'s Local Rule 56(a)1 St. ¶¶ 16-20, admitted by Plaintiff.)

18

Another complainant refused to cooperate with the City's investigator and, thus, the investigation was closed. In another, the complainant could not identify the perpetrator, who was not in uniform at the time of the alleged assault, but whom she believed to be a police officer. Another complaint was investigated and closed as unfounded when the complainant changed her testimony. One investigation did not involve criminal misconduct, but the officer was charged with conduct unbecoming an officer for attempting to initiate a sexual relationship with a high school student. That officer resigned before any disciplinary action could be taken. Another investigation involved two off-duty police officers who engaged in consensual sexual activity in a public place. Both were disciplined for conduct unbecoming an officer. Of the final two investigations, one was not sustained based upon inconclusive evidence obtained during the investigation. The other was closed administratively when the alleged victim denied any sexual relationship with the officer. (Def.'s Local Rule 56(a)1 St. ¶ 21, admitted by Plaintiff.) No other evidence supporting Plaintiff's failure-to-supervise claim was presented.

The Second Circuit considered a failure-to-supervise claim in the case of <u>Vann v. City of New York</u>, 72 F.3d 1040 (2d Cir. 1995). In <u>Vann</u>, the Court held that "[t]o prove such deliberate indifference, the plaintiff must show that the need for more or

better supervision to protect against constitutional violations
was obvious.  An obvious need may be demonstrated through proof
of repeated complaints of civil rights violations; <u>deliberate
indifference may be inferred if the complaints are followed by no
meaningful attempt on the part of the municipality to investigate
or to forestall further incidents</u>."  <u>Id.</u> at 1049 (internal
citations omitted) (emphasis added).

Here, despite Plaintiff's admission that each of the
individual complaints was investigated with resulting discipline
against certain individual officers, she asserts in conclusory
fashion that the City took no other action to address this
history of abuse or to prevent incidents of sexual misconduct and
abuse of authority in the future.  Plaintiff maintains that the
question of whether this lack of further action by the City
constitutes "deliberate indifference" remains a triable issue for
the jury's determination.

In <u>Watts v. City of Hartford</u>, this Court addressed similar
claims by a plaintiff that the City's failure to implement and
maintain an adequate system for responding to citizen complaints
of brutality by the City's police officers demonstrated a policy
of negligent supervision that rose to the level of deliberate
indifference.  <u>Watts</u>, 2004 WL 717132, at *4.  Citing <u>Batista v.
Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983), and <u>Fiacco v. City
of Rensselaer</u>, 783 F.2d 319, 331 (2d Cir. 1986), <u>cert. denied</u>,

20

480 U.S. 922 (1987), the Court acknowledged that municipal
inaction, such as the persistent failure to discipline
subordinates who violated civil rights, could give rise to an
inference of an unlawful municipal policy of ratification of
unconstitutional conduct within the meaning of Monell. Id.
Nonetheless, the Court concluded that summary judgment was
warranted on the plaintiff's failure-to-supervise claim.  The
plaintiff in Watts relied upon two studies involving the Hartford
police department, one of which significantly pre-dated the
incident in question and the other made no reference to
complaints of unconstitutional conduct or the department's
handling of such complaints.  The Court found that "[c]onstrued
most favorably to plaintiff, the Study suggests that there were
deficiencies in the citizen complaint process and a perceived
lack of discipline."  Watts, 2004 WL 717132, at *5.  The Court
held, however, that a "general policy of lax discipline, assuming
it could be proven, does not demonstrate deliberate indifference
to serious misconduct rising to the level of unconstitutional
acts."  Id. at *5 (citing Davis v. Lynbrook Police Dept., 224 F.
Supp. 2d 463, 478-79 (E.D.N.Y. 2002), Harris v. City of Kansas
City, 703 F. Supp. 1455 1459 (D. Kan. 1988), and Poulsen v. City
of North Tonawanda, 811 F. Supp. 884, 896 (W.D.N.Y. 1993)).
"Plaintiff must provide evidence from which a reasonable juror
could conclude that, before the [incident] at issue here, the

21

City's response to citizen complaints of police brutality demonstrated a policy of negligent supervision that rose to the level of deliberate indifference to the officers' use of deadly force in violation of constitutional rights." Id. at *4 (citing Berry v. City of Detroit, 25 F.3d 1342, 1346 (6th Cir. 1994), cert. denied, 513 U.S. 1111 (1995), and Batista v. Rodriguez, 702 F.2d at 397). "Further, plaintiff must provide evidence that this repeated failure to discipline other officers was closely related to and actually caused [the defendant officer's] shooting of plaintiff's decedent." Id. This the plaintiff failed to do and, thus, the Court granted summary judgment in favor of the city.

In the instant case, Plaintiff has presented even less evidence to demonstrate a lack of response to citizens complaints that would rise to the level of deliberate indifference by the City and has produced no evidence whatsoever that the City's failure to investigate and supervise its officers was closely related to and actually caused the intentional sexual assault by Officer Camacho on Plaintiff. See Watts, 2004 WL717132, at *4. Although eight of the fourteen complaints of sexual misconduct by police officers occurred prior to December 1997, when Plaintiff was sexually assaulted, as discussed above, all were investigated, with two of the eight resulting in the arrest of the officer. (See Ex. to Pl.'s Opp'n to Mot. for

Reconsideration, City's Answers to Interrog.)  To the extent that Plaintiff disagrees with the level of discipline imposed or deficiencies in the citizen complaint process, that does not demonstrate deliberate indifference to serious acts of misconduct, rising to the level of unconstitutional acts.  See Watts, 2004 WL 717132, at *5.  As the Court held in Mahan v. City of New York, No. Civ. A.00-CV-6645, 2005 WL 1677524, at *5 (E.D.N.Y. July 19, 2005), in granting summary judgment on the plaintiffs' failure-to-discipline claim, "mere negligence or bureaucratic inaction does not rise to the level of an actionable violation. . . . Plaintiffs must raise an inference that the municipality or its policy-makers actually condoned such conduct and that the system is so deficient as to reflect a policy of deliberated indifference to the civil rights of the citizenry." (Internal citations and quotation marks omitted).  This, Plaintiff has failed to do.[5]

Plaintiff Santiago has produced no evidence that a policymaker had notice of a potentially serious problem involving unconstitutional conduct, such that the need for additional

---

[5]  This case, like Mahan, is distinguishable from Vann v. City of New York, 72 F.3d 1050-51, in which the Second Circuit reversed the grant of summary judgment for the city where there was evidence of an extensive number of complaints against the officer at issue and expert testimony regarding the deficiencies in the city's monitoring program of its police officers suggesting system-wide deficiencies.  See Mahan, 2005 WL 1677524, at *7.

supervision was obvious, and then made a conscious choice not to investigate or rectify the situation.  See Doe II, 2005 WL 2009051, at *6.

The Court finds that Plaintiff has failed to present any evidence that a policymaker consciously ignored the need for additional supervision or that the lack of supervision caused her injury.  Given this lack of evidence to support her claim, the City is entitled to summary judgment as a matter of law on her failure to supervise theory of liability under § 1983.

### Conclusion

For the reasons set forth above, the Court grants Defendant's Motion for Reconsideration [Doc. # 51].  Upon reconsideration, the Court vacates its earlier ruling [Doc. # 49] on Plaintiff's inadequate training and failure-to-supervise claims under § 1983 and grants summary judgment in favor of the City on Count Five of Plaintiff's Complaint.  While this ruling disposes of all claims against the City, the claims against Officer Camacho remain pending.

SO ORDERED, this ___12th___ day of September, 2005, at Bridgeport, Connecticut.


_____/s/ William I. Garfinkel_____
WILLIAM I. GARFINKEL
United States Magistrate Judge